UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

CHARLES ROY HAYES,

                Plaintiffs,

v.

IVELYS FRANCO, et al.

                Defendants.

Case No. 2:15-cv-01913-RFB-CWH

ORDER

## I. INTRODUCTION

Before the Court is Defendants' joint Motion to Dismiss. ECF No. 18. The Court has reviewed the parties' papers and heard oral argument. Plaintiff asserts 42 U.S. § 1983 violations for "fraud while acting under color of law, hence denial of due process and equal protection" against Ivelys Franco, Gail Lowery, Keith Sakelhide, Thoran Towler, and Soonhee Bartel Bailey, and 41 U.S. § 1983 conspiracy to defraud violations against Franco and Sakelhide. For the reasons discussed below, Defendants' Motion is granted.

## II. ALLEGED FACTS

The following facts are alleged by the Plaintiff in this case. On August 4, 2011 Hayes submitted a Claim for Wages ("Claim") to the Office of the Labor Commissioner, for $760 in wages legally due from his employer Patti Rubin. On August 11, 2011, the Chief Investigator Dizon of OLC Las Vegas forwarded Hayes' Claim to his employer Rubin. On August 16, 2011, Rubin Faxed to the OLC a denial of Hayes' claim, asserting that OLC did not have jurisdiction because she saw that he was spending time learning something he had said he knew and that he had therefore misrepresented his abilities. In February 2012, Defendant Linda Gail Lowery-Glaze

was appointed as Chief Investigator of the OLC. On March 5, 2012, 214 days after Hayes submitted his Claim, Defendant Investigator Ivelys Franco was assigned to Hayes's Claim.

On March 23, 2012, Franco wrote and distributed a determination which found for Hayes, assessing employer Rubin $760 for unpaid wages and assessing Rubin a penalty in the amount of $3,840 for non-payment of wages over a period exceeding 30 days. Employer Rubin did not pay, and there is no evidence that Rubin submitted an objection to this original determination. On March 28, 2012, 5 days after the first determination, Franco wrote and distributed a second determination in which she maintained that after further review, she found that the OLC had no jurisdiction because Hayes had submitted invoices for his work. It further stated that Hayes's Claim was closed. The revised determination did not say who or what caused the further review, and did not cite to Nevada law regarding invoices.

On April 9, 2012 Hayes mailed an objection to Franco. Franco did not respond and has to date never responded.

On May 22, 2012 Hayes mailed a letter to Defendant Thoran Christian Towler, asserting that Hayes was Rubin's employee and that Franco's determination was invalid, and that she had not responded to Hayes's timely-filed objection.

On May 24, 2012, Hayes letter to Towler arrived and Franco reopened Hayes's claim.

On May 29, 2012, Franco sent a letter to Hayes demanding additional information, including his federal income tax return. On June 5, 2012 Hayes responded to the letter and wrote, among other things, that he had not received a legally required IRS form 1099-Misc from IPATT Group (the employer).

On August 2, 2012, Defendant Keith Anthony Sakelhide sent Hayes a Notice of pre-hearing Conference, reiterating the initial determination finding against IPATT, and stating that efforts to reach a settlement had thus far been unsuccessful. On August 24, 2012, Hayes mailed a request to Sakelhide for any materials disputing his claim submitted by the employer. Sakelhide did not respond, and has never responded. Hayes then mailed the same request to Franco. On September 20, 2012, Franco forwarded Rubin's 10-page faxed dispute of the claim, received by the OLC on August 16, 2011. Hayes received the materials on September 21, 2012.

On October 31, 2012, Hayes sent to Franco, Dizon, and Sakelhide a formal answer to Rubin's denial of his claim, citing evidence and legal authority. Sakelhide received Hayes's Answer but did not cancel or postpone the Pre-Hearing Conference.

On November 7, 2012 Sakelhide's Pre-Hearing Conference took place. Sakelhide, Franco, Hayes, and Rubin attended. Sakelhide attempted to reach a settlement, meeting with the parties separately and together. After meeting separately with Franco, Sakelhide began scheduling a hearing for Hayes's claim. Franco stated that she remembered that she had invalidated her initial determination. Sakelhide directed Franco to issue a Revised Determination in 14 days and cancelled and voided his Pre-Hearing Conference.

Franco subsequently received new materials from Rubin, but did not reveal them to Hayes.

On November 21, 2012, Franco mailed her Revised Determination to Rubin and Hayes in which she found against Hayes, stating " ... there was no employee/employer relationship and therefore the Office of the Labor Commissioner has no jurisdiction in this matter," and denying him all wages and penalties. Noticing Rubin's new materials cited in the Revised Determination, Hayes mailed a request for copies to Franco. She then sent him 43 pages of materials from Rubin on November 30, 2012.

On December 6, 2012, Hayes submitted an objection to the Revised Determination. On December 26, 2012 Hayes sent a request for review to Towler. Towler did not reply. On January 23, 2012, Lowery, Chief investigator of OLC, phoned Hayes saying that she would not be handling his claim. She then reviewed the documents he had submitted. On February 25, 2013, Lowery emailed Hayes regarding a proposed meeting on March 1, 2013, stating that her job is to ensure that everything had been done according to the correct process in his case. She stated that she would ask him for any evidence that he was an employee rather than an independent contractor. On April 8, 2013, Hayes emailed Lowery an Offer in Compromise to settle his claim. Lowery did not respond.

On April 23, 2013, Lowery issued her Determination, finding that Hayes was entitled to $760, but would be denied penalties because Hayes and Rubin were willing participants in the misclassification of employer status. On May 8, 2013 Hayes mailed an Objection to Lowery's

determination. Lowery did not respond. He later mailed a request for a response and she stated that she was not required to respond in writing. On June 21, 2013 Hayes mailed to Towler a Request to Review Lowery's Determination. Towler did not and has not responded.

On July 5, 2013, Sakelhide issued a Notice of Hearing. The Notice gave a deadline of July 26, 2013, for parties to submit and exchange witness lists. On July 9, 2013, Hayes mailed a request for clarification of the notice. He repeated the request on July 20, 2013. On July 25, 2013, Lowery left a message for Hayes asking if he wanted to go to Vegas OLC to go over the requirements for the hearing. Hayes responded by email, repeating his request for clarification, and asking that she email him any information as to the hearing. He mailed a copy of the email to Towler. On August 19, 2013, Lowery sent information regarding the hearing to the wrong email address.

On August 19, 2013 Hayes mailed a petition for redress to Towler and forwarded it to Sakelhide. Neither ever responded.

On September 18, 2013 Lowery's subordinate Alexandra Cano emailed Hayes the hearing packet, which purported to contain all of the evidence submitted by Hayes and the employer. It omitted material he had submitted, including alleged evidence of misconduct by OLC personnel.

On September 24, 2013, Hayes emailed Cano and Lowery requesting deferment of the hearing, based on his belief that Rubin had been given a filing extension and he had not.

On September 25, 2013, in an email to Hayes with the Defendants copied, Lowery stated that Rubin had agreed to accept Hayes's offer of compromise, and that the hearing scheduled for the next day would be cancelled. Hayes had not received or endorsed the settlement document.

On September 26, 2013, Lowery mailed a copy of the offer of compromise signed by Rubin, and stating that he would receive his check upon signing and returning it. Believing Defendants and Rubin had violated the law, he refused to sign the agreement.

On October 7, 2013, Lowery sent a letter to Hayes with a check for $380, stating that the case was settled and the matter closed, and that the office would take no further action in the case.

On December 10, 2013 Hayes requested his Claim's complete Contact History, which he received on December 19, 2013.

Hayes mailed a letter to Williams, the OLC's public information officer, requesting all

communications between OLC personnel and Rubin and her secretary Orozco. Parton mailed to him a CD containing documents Hayes had already received in the hearing packet. Parton later stated in writing that these were the only OLC documents regarding his claim.

On November 24, 2014, Hayes sent a Petition for Declaratory Order and a cover letter to Towler, alleging violation of Nevada law and requesting compensation. On December 11, 2015, Soonhee Anita Bartel-Bailey, the acting labor commissioner, rejected Hayes's Petition to Towler, stating that he was attempting to re-litigate matters for financial gain. She concluded "Therefore, it is ordered that, based on the foregoing, this matter is dismissed with prejudice."

### III.   LEGAL STANDARD

#### A.  Motion to Dismiss

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but merely asserting "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is not sufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted). In elaborating on the pleading standard described in Twombly and Iqbal, the Ninth Circuit has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

### B. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Qualified immunity is an immunity from suit rather than a defense to liability, and "ensures that officers are on notice their conduct is unlawful before being subjected to suit." Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014). In deciding whether officers are entitled to qualified immunity, courts consider, taking the facts in the light most favorable to the nonmoving party, whether (1) the facts show that the officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly established at the time. Id.

Under the second prong, courts "consider whether a reasonable officer would have had fair notice that the action was unlawful." Id. at 1125 (internal quotation marks omitted). While a case directly on point is not required in order for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011). This ensures that the law has given officials "fair warning that their conduct is unconstitutional." Ellins, 710 F.3d at 1064. Further, the right must be defined at "the appropriate level of generality . . . [the court] must not allow an overly generalized or excessively specific construction of the right to guide [its] analysis." Cunningham v. Gates, 229 F.3d 1271, 1288 (9th Cir. 2000); see also al-Kidd, 131 S. Ct. at 2084. The plaintiff bears the burden of proving that the right was clearly established. Id. at 1125.

### IV. DISCUSSION

#### A. Federal Claims

In each count, Hayes alleges that the Defendants violated their oath of office, and acted in contradiction to state law and Office of the Labor Commissioner procedures, thereby committing "fraud while acting under color of law," violating 18 U.S.C. § 1983.

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen

of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities <u>secured by the Constitution and laws</u>, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983 (emphasis added).

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating <u>federal</u> rights elsewhere conferred." <u>Albright v. Oliver</u>, 510 U.S. 266 (1994) (internal quotations omitted) (emphasis added). "To state a claim under § 1983, a plaintiff must allege the violation of a right <u>secured by the Constitution and laws of the United States</u>, and must show that the alleged deprivation was committed by a person acting under color of state law." <u>West v. Atkins</u>, 487 U.S. 42 (1988) (emphasis added). "To establish a civil rights claim under 42 U.S.C. § 1983, a plaintiff must assert more than a violation of state tort law-he must show that the defendant deprived him of an interest protected by the Constitution or federal law." <u>Weiner v. San Diego County</u>, 210 F.3d 1025, 1032 (9th Cir. 2000).

The claims for violations of state oath of office and for violation of or failure to execute state law or regulation are not cognizable under § 1983, the sole federal law under which Hayes asserts his claim. As noted, he must assert a violation of federal rights by state actors to adequately state a claim. As such, these claims are dismissed with prejudice.

Plaintiff has also asserted claims for fraud under state law. Plaintiff has not, however, established with his fraud allegations a cognizable claim in federal court. While the headings on pages 16 and 18 suggest a possible equal protection claim, Hayes has not alleged a violation of the elements of an equal protection claim. He has not pled that he was treated differently than other similarly situated petitioners, nor that he was treated differently because of belonging to any protected class. As Hayes provides no basis from which the Court could conclude that he might be able to plead an equal protection violation, the claims for equal protection violation are dismissed.

Finally, Plaintiff appears to discuss or reference potential claims for a violation of his federal due process rights. Plaintiff has not, however, pled with sufficient detail and clarity any plausible substantive due process violations. Even though he is *pro se*, Plaintiff must still allege a clear and coherent claim to allow Defendants to be able to adequately defend against it. <u>Iqbal</u>, 556

U.S. at 678. He has not done so with respect to a federal substantive due process claim. So his Complaint cannot proceed on such claims and any potential but unspecified claims are dismissed at this time. However, Plaintiff does assert unlawful and inadequate process in the handling of his claims, and has presented facts that might state a procedural due process claims. Therefore, liberally construing the complaint, the Court evaluates potential claims for procedural due process violations.

### B. Due Process Claim(s)

#### 1. Legal Standard

##### a. Protected Interest

"The Fourteenth Amendment protects against the deprivation of property or liberty without procedural due process." Brady v. Gebbie, 859 F.2d 1543, 1547-48 (9th Cir. 1988). "The property interests that due process protects extend beyond tangible property and include anything to which a plaintiff has a legitimate claim of entitlement. A legitimate claim of entitlement is created and [its] dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Further, as we have previously held, plaintiffs have a protected property right in public benefits when, as here, a statute authorizes those benefits and the "implementing regulations greatly restrict the discretion of the people who administer those benefits." Nozzi v. Housing Authority of City of Los Angeles, 806 F.3d 1178, 1191 (9th Cir. 2015).

"Deprivation of a benefit to which one is entitled under a statute or a contract does not automatically give rise to a property interest protected by the Due Process Clause. It is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a state into a federal claim. [T]he Fourteenth Amendment was not intended to shift the whole of the public law of the states into the federal courts. Thus, although the determination of what is property is made by reference to state law, a court must look to federal constitutional law to determine whether the interest is of the kind protected by the Fourteenth Amendment." Portman v. County of Santa Clara, 995 F.2d 898, 905 (1993).

### b. Process Required

Once it has conferred a protected property interest . . . the legislature "may not constitutionally authorize the deprivation of such an interest . . . without appropriate procedural protections." Loudermill, 470 U.S. at 541. At a minimum, Due Process requires "notice and an opportunity to respond" prior to an individualized determination that eliminates the property interest[.] See Id. at 546-47

What process is due depends "on the consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Matthews v. Eldridge, 424 U.S. 319, 335 (1976).

"The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." Matthews v. Eldridge, 424 U.S. 319, 333 (1976). "Ordinarily, due process of law requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest." Samson v. City of Bainbridge Island, 683 F.3d 1051, 1059 (9th Cir. 2012).

"In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking. Conversely, in situations where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake, or where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest, postdeprivation remedies might satisfy due process." Zinermon v. Burch, 484 U.S. 113, 132 (1990) (internal citations omitted). Where the deprivation is caused by a mistake, or by intentional but errant and unauthorized behavior in contravention of law or policy, the state cannot anticipate a violation, and is not in a position to provide prophylactic process. Id. at 137 (citing Daniels v. Williams, 474 U.S. 327, 341 (1986) (Stevens, J., concurring in judgments); Hudson v. Palmer, 468 U.S. 517, 531 (1984)).

. . .

**2. Discussion**

Defendants argue that each Defendant is entitled to either absolute immunity or qualified immunity for any potential procedural due process violations. Plaintiff asserts "denial of due process" in each of his claims. Hayes argues that the "catalogue of intentional abuses" of the defendants rises to a violation of due process. Among other violations, Hayes cites to a failure to respond to objections as required by NAC 607.070. Hayes's response motion focuses on "intent to defraud" and "fraud under color of law," citing numerous alleged falsehoods in statements and decisions related to his wage claim. He does not address the procedural due process standard as raised in the motion to dismiss, or state which procedural violations, or what deficiency of procedures, amount to a procedural due process violation.

Each of the Defendants in this case are officials or employees of the Office of the Labor Commissioner, sued for acts committed in their official capacities. As such, each is entitled to qualified immunity, and will not be liable unless they have violated a clearly established constitutional right. For a right to be clearly established, "existing precedent must have placed the . . . constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). Plaintiff cannot overcome qualified immunity unless he can show (1) that he was deprived of a clearly established property right, cognizable for procedural due process purposes, and (2) that it is clearly established that the process he was given was constitutionally inadequate.

"Deprivation of a benefit to which one is entitled under a statute or a contract does not automatically give rise to a property interest protected by the Due Process Clause . . . Thus, although the determination of what is property is made by reference to state law, a court must look to federal constitutional law to determine whether the interest is of the kind protected by the Fourteenth Amendment." Portman v. County of Santa Clara, 995 F.2d 898, 905 (1993). While the Supreme Court and the Ninth Circuit have recognized protected property rights in tenured employment, social security benefits, and rental assistance—all forms of direct material benefits provided by the state—the Court could find no case establishing a protected property right in a wholly private benefit as guaranteed under state law. To find a property right in the recovery of wages wrongfully denied as protected by a state administrative process would effectively

constitutionalize procedure for any state law civil claim in which a plaintiff seeks private benefits, or compensation for injury, as guaranteed by state law. There is no precedent for such a property interest. Thus, there is no basis in this case for finding a property interest which could be subject to a due process violation.

In the event such a right existed, the Court finds that the individual defendants would be entitled to qualified immunity. Mr. Hayes does not allege that Nevada law and Office of the Labor Commissioner procedures are facially inadequate, but rather asserts that each of the defendants, separately and as part of a conspiracy, have systematically violated the law and OLC procedural regulations, such that any apparent procedure was in effect meaningless.

The Court finds that Hayes has not pointed to, and the Court has not found, a clearly established right violated by the individual defendants. He cannot establish that the available postdeprivation process was inadequate or unavailable. A postdeprivation process was available to him under state law. See City Plan Development, Inc. v. Office of Labor Com'r, 117 P.3d 182 (Nev. 2005) (reviewing a district court decision setting aside a decision of the labor commissioner and noting "[t]his court, like the district court, generally reviews administrative decisions under an abuse of discretion standard.") At the hearing on January 6, 2017, Mr. Hayes responded to the State's question as to the possibility of an appeal in state court, stating "I seem to recall that . . . there was a 60-day window of opportunity to take this outside of the office of the Labor Comissioner." Jan. 6, 2017, Tr. at 5. Hayes claimed that he was not aware of the violations until almost two years later when he read the entire contact history report; however, this is belied by his own pleading that he filed numerous objections throughout the OLC process, including on November 24, 2014, shortly before his case before the Commissioner was dismissed. Thus, a further postdeprivation process and remedy was available to him and he did not avail himself of it. The individual defendants are therefore entitled to qualified immunity even if the substantive aspect of Hayes' claim were to proceed.

. . .

. . .

. . .

## V. CONCLUSION

**IT IS ORDERED** that Defendants' Motion to Dismiss, ECF No. 18, is GRANTED as to all claims and all Defendants. The Clerk of the Court is ordered to close this case.

DATED: September 25, 2017.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**